McKiNNEY, J.,
delivered tbe opinion of the Court.
This was an action of assumpsit, to recover the sum of two hundred dollars, placed by the plaintiff in the hands of Yost, under the following circumstances:
A conversation took place between Brown and Welcker, in regard to the purchase, by Brown, of a negro man, owned by Welcker. The parties disagreed as to the value of the slave. Brown agreed to pay $1,200 for the slave, provided he were as likely as a certain slave belonging to him, but if not as likely, the stipulated price was to be abated according to the difference. The parties agreed to meet at Stegall’s on a certain day, and selected Kincaid and Yost to determine the controverted matter of fact between them — whether Welcker’s slave was as likely as the slave of Brown, and if not, “how much less likely he was,” and the deduction to be made, on account of the difference, from the sum of $1,200 — and Brown was to take the slave at the reduced price. It was further agreed, that each party should make a deposit of $200 in money in the hands of Yost, which, in the event either party failed to execute the contract, was to be forfeited by him, and paid over to the other by the stake-holder.
The parties, together with the appointed referees, met at the time and place fixed upon. Kincaid, one of the referees, was examined on the trial, and stated that, “on conferring with Yost, it was mutually agreed by them that they would not decide the matter referred to them, but would decline to do so, and recommend the parties *199 to settle it themselves, Mr. Yost remarking- to witness that the agreement was made in a sort of Christmas frolic, when both parties had been drinking. Witness and Yost declined to make the valuation, and never did make it. ”
On cross-examination, Kincaid stated that he was disinclined to act in the matter, because Brown had informed him, on the way, that he would not stand to it, because Welcker had deceived him in Ms representations-as to the character of the negro, and he heard Brown refuse to go into it several times when the parties met at Stegall’s.
The proof shows that Brown demanded the $200 from Yost, and also from Welcker, and both refused to pay back the money. It was also proved, that about a week after the meeting at Stegall’s, Brown requested Welcker to re-pay him the $200, or else to let him have the slave at $1,200, but Welcker refused to do either. On the part of the. defendant, it was proved by the witness, Stegall, that “after the referees declined to decide the matter, Welcker several times tendered his negro to Brown, who refused to take him,” and said “he did not intend to take him.”
Upon this state of facts, was the plaintiff entitled to recover back the deposit?
It is clear that the contract was not complete, until the matter of difference between the parties should be settled by Kincaid and Yost, who must be regarded as arbitrators, empowered to make an award upon a parol submission, and whoso award would have been conclusive upon the parties, unless impeached for causes sufficient to invalidate an award.
*200 The disputed fact, as to the relative value of the two slaves, was to be determined by the referees. This was an important term of the agreement, and until this was done, no obligatory contract could exist. The ascertainment of the value in the stipulated mode, was an act necessarily precedent to the completion of the contract. Consequently, if the arbitrators, of their own accord, declined to act, or to make an award, the agreement was thereby put an end to, and the parties, respectively, were entitled to receive back the deposit from Yost; for the forfeiture of the deposit could only result from the refusal of either party to abide by the agreement, after it should have been completed by the act of the arbitrators fixing the value; or, possibly, from the voluntary act of either party, in revoking the authority of the arbitrators, and defeating, thereby, the completion of the contract.
The error of the charge, lies in the assumption that the mere expression of a determination, on the part of Brown, not to stand to the agreement, put an end to the contract, or was equivalent to a revocation of the authority of the arbitrators. Such was not the legal effect. Brown had positively committed himself to the decision of the arbitrators, and could not escape from the conclusive effect of their decision, if fairly made. True, he might have revoked the authority before it was executed by the arbitrators, that is, before they acted under it; but if this were not done, neither the power, nor the duty of the arbitrators to make an award, could be effected, in any way, by the declarations of Brown, that he would not abide his agreement. Not having revoked their authority, he had no power over them to prevent *201 their execution of it, and such declarations are simply nugatory. The award, if fairly made, would have been just as operative and binding on Brown as if no such declarations had been made.
From the statement of Kincaid, there was no revocation of the authority of the arbitrators. The conclusion, from the statement of the witness, necessarily is, that the arbitrators, acting upon their own vieios of what was most proper, under all the circumstances, mutually determined not to execute the power conferred upon them, and declined doing so: and of this determination the parties were informed. This at once put an end to the executory agreement of the parties, which depended for its legal operation, upon the further act of the arbitrators, by which the value of the slave was to be fixed. And this failing, each party was instantly entitled to have his deposit refunded. In this view, the stakeholder wrongfully paid over the money, and both he and the party receiving it, with knowledge of the facts, are liable to refund it.
The disinclination of the arbitrators to act, no matter from what cause, is unimportant. Such a consideration would not, of itself, have effected the validity of their award, if an award had been made. It would have been sufficient that they, in fact, did execute the power, however reluctantly, if nothing more could have been said against the award. It is enough for the determination of the present case, that the arbitrators, in the exercise of their own judgment, for reasons satisfactory to them, declined to execute the authority, or to determine the matter referred to their decision. This was, *202 in legal effect, an end of the whole agreement, and entitled the parties to be placed in statu quo.
Upon the facts, as presented in this record, we think the judgment is erroneous.
Judgment reversed.